SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@sandiegoconsumerattorneys.com
Jared M. Hartman (SBN 254860)
jared@sandiegoconsumerattorneys.com
400 S. Melrose Dr., Suite 209
Vista, CA 92081
Telephone: (951) 293-4187; Fax: (888) 819-8230

Attorneys for Plaintiffs, ATLEY HENRY & LAURA HENRY

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ATLEY HENRY, an individual, and LAURA HENRY, an individual<br><br>Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC; and DOES 1-10;<br><br>Defendant. | Case No.: **'17CV0688 JM  NLS**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>  1. **FEDERAL FAIR CREDIT REPORTING ACT**<br>  2. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**<br>  3. **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**<br>  4. **PROMISE WITHOUT INTENT TO PERFORM** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE DISTRICT COURT JUDGE:

Plaintiffs, ATLEY HENRY and LAURA HENRY ("Plaintiffs"), both individuals, by and through his attorneys of record, BABAK SEMNAR and JARED M. HARTMAN of SEMNAR & HARTMAN, LLP, hereby complain and allege as follows:

## INTRODUCTION

1. Plaintiffs, by and through their attorneys, bring this Complaint to challenge the actions of Defendant OCWEN LOAN SERVICING, LLC ("Defendant OCWEN") for reporting false, misleading, and inaccurate information on Plaintiffs' credit reports

1 to the credit reporting agencies, as well as OCWEN's and failure to conduct a reasonable investigation into written disputes, all of which have caused Plaintiff damages, and by claiming to Plaintiffs that they owe false amounts of monies to Plaintiffs, and by offering to Plaintiffs an amount that Defendant willfully did not intend to perform.

2. This action arises out of Defendant OCWEN's violations of the Federal Fair Credit Reporting Act (15 U.S.C. §§ 1682-1681x) ("FCRA"), the California Consumer Credit Reporting Agencies Act (Cal. Civ. Code §§ 1785.1-1785.36) ("California CCRAA"), Rosenthal Fair Debt Collection Practices Act (Calif. Civ. Code §1788, *et seq.*) ("Rosenthal Act").

## JURISDICTION & VENUE

4. This action arises out of OCWEN's violations of the FCRA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p.

5. Because Defendant regularly conducts business within the State of California, personal jurisdiction is established.

6. Because all tortious conduct occurred while Plaintiffs resided in the County of San Diego, and witnesses are present therein, venue properly lies in this court.

## PARTIES & DEFINITIONS

7. Plaintiffs are both natural persons whose permanent residence is in the County of San Diego, State of California.

8. OCWEN regularly does business in the County of San Diego, State of California, but is physically located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

9. Plaintiffs are both natural persons, and are therefore each a "consumer" as that term is defined by Calif. Civ. Code § 1785.3(b) of the California CCRAA and 15 U.S.C. § 1681a(c) of the Federal FCRA.

2
**Complaint for Damages and Injunctive Relief**

10. The causes of action herein pertain to Plaintiffs' "consumer credit reports", as that term is defined by Calif. Civ. Code § 1785.3(c) of the California CCRAA and 15 U.S.C. § 1681a(d)(1) of the Federal FCRA, in that inaccurate misrepresentations of Plaintiffs' credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, or household purposes, and employment purposes.

11. The causes of action herein also pertain to Plaintiffs' "'consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiffs' credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiffs' eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

12. Defendant is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Calif. Civ. Code § 1785.3(j) of the California CCRAA and 15 U.S.C. § 1681a(b) of the Federal FCRA.

13. Plaintiffs, as natural persons allegedly obligated to pay a consumer debt to Defendants, alleged to have been due and owing, are therefore each a "debtor" as that term is defined by Calif. Civil Code § 1788.2(h) of the Rosenthal Act.

14. Defendant alleged that it was trying to collect from Plaintiffs upon a home mortgage loan that was issued to Plaintiffs to purchase a home. Therefore, Plaintiffs are informed and believe that the money alleged to be owed to Defendants originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" Calif. Civil Code § 1788.2(d) of the Rosenthal

3
**Complaint for Damages and Injunctive Relief**

1  Act.

2      15. The money that was provided to Plaintiffs by Defendant was issued as a home mortgage loan, which was given to Plaintiffs without payment being required of them at the time, with an agreement that Plaintiffs would pay the loan back over time with both principal and interest, and therefore the underlying alleged debt was a "consumer credit transaction" within the meaning of Calif. Civil Code § 1788.2(e) of the Rosenthal Act.

    16. Because Plaintiffs, each a natural person allegedly obligated to pay money to Defendant arising from a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of Calif. Civil Code § 1788.2(f) of the Rosenthal Act.

    17. Plaintiffs are informed and believe that Defendant regularly collects or attempts to collect on behalf of themselves debts owed or due or asserted to be owed or due, and is therefore a "debt collector" within the meaning of Calif. Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act, is also therefore a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act, and is also a "creditor" under California Civil Code § 1788.2(i).

## FACTUAL ALLEGATIONS

    18. Plaintiffs obtained a home mortgage loan through OCWEN with repayments to include both principal and interest.

    19. At some point in the year 2012 or 2013, Plaintiffs began suffering financial difficulties in making their full monthly payments to OCWEN.

    20. The home mortgage loan originated by way of finances being provided for Plaintiffs to purchase a residential home, in exchange for Plaintiffs making monthly payments to cover both the principal and interest.

    21. The funds were therefore provided upon credit, so that Plaintiffs could take possession of the residence and real property without payment being required by them

at the time of taking such possession.

22. By letter dated October 16, 2013, OCWEN offered Plaintiffs a loan modification that allowed Plaintiffs to make monthly payments of $310.09.

23. OCWEN's offer did not require Plaintiffs to pay any money down. It did, however, require Plaintiffs to return a signed notarized loan modification agreement by October 26, 2013.

24. Plaintiffs complied with all instructions required of them, and therefore met all pre-requisite conditions imposed by OCWEN to accept the modification offer.

25. As such, OCWEN and Plaintiff entered into a legally binding modification agreement, requiring Plaintiffs to continue making their mortgage payments at $310.09 per month while requiring OCWEN to accept said amount as Plaintiffs' new monthly mortgage payments.

26. Unfortunately, OCWEN never intended to comply with this promise.

27. OCWEN's intent to not comply with the October 2013 agreement is evident because in April 2014 OCWEN sent another loan modification agreement to Plaintiffs with a higher monthly payment amount.

28. OCWEN's conduct was also motivated by their intent to trick Plaintiffs into signing the April 2014 agreement so that the October 2013 agreement would be superseded.

29. Plaintiffs never signed or returned this April 2014 agreement and therefore the October 2013 modification agreement has remained the controlling mortgage agreement between the parties.

30. Although Plaintiffs never agreed to supersede the October 2013 agreement with the proposed April 2014 agreement, OCWEN still refused to honor the October 2013 agreement. Moreover, OCWEN refused to accept Plaintiffs' monthly payments of $310.09.

31. OCWEN instead placed some of the payments made by Plaintiffs in a generic escrow account instead of applying the payments to Plaintiff's loan.

5
**Complaint for Damages and Injunctive Relief**

32. Some payments have even been fully rejected and not applied to either an escrow account or accepted as repayment of Plaintiffs' loan. .

33. At some point in the year 2014, OCWEN informed Plaintiffs that it had unilaterally decided to not honor the October 2013 agreement because it was not a good deal for OCWEN.

34. Thereafter, Plaintiffs retained the services of an attorney in hopes of reaching an informal resolution.

35. Plaintiffs were financially harmed, as they were forced to pay an attorney to engage in informal discussions with OCWEN in hopes that OCWEN would simply agree to honor the October 2013 legally binding offer that had been accepted by Plaintiffs.

36. Unfortunately, no progress was made through informal discussions, as OCWEN began ignoring Plaintiffs' attorney and in fact refused to communicate with him.

37. By January 2017, Plaintiffs discovered that OCWEN had been reporting upon Plaintiffs' consumer credit reports that Plaintiffs were over 180 days past due on their mortgage loan, that the amount past due is approximately $40,663.00 as of the date of November 30, 2016, and that Plaintiffs have a scheduled monthly payment amount of $964.00.

38. However, any claim by OCWEN that Plaintiffs' monthly payment is anything more than $310.09 is not accurate.

39. Furthermore, any claim by OCWEN that Plaintiffs are over 180 days past due and that the amount past due is $40,663.00 as of the date of November 30, 2016 is misleading because Plaintiff's past due as well as the balanced owed is a result of OCWEN's refusal to honor the October 13, 2016 agreement and thereafter refusing to accept Plaintiffs' payments in accordance with such agreement.

40. Every month since November 2013, Plaintiffs have received letters from OCWEN falsely claiming that Plaintiffs owe monthly payments higher than the agreed-

6
**Complaint for Damages and Injunctive Relief**

upon amount of $310.09.

41. Any attempt by OCWEN to collect any monthly amount above the agreed-upon amount of $310.09 is an attempt to collect monies to which OCWEN is not entitled to collect because OCWEN contracted with Plaintiffs to accept $310.09 as part of their October 2013 modification agreement.

42. Furthermore, within the past year, Plaintiffs have received letters at least each month containing false threats by OCWEN that OCWEN intended to seek foreclosure upon the loan and take possession of the property.

43. OCWEN also falsely claimed that Plaintiffs could avoid foreclosure by making payments upon the loan in the amount that OCWEN demanded or for Plaintiffs to seek another loan modification.

44. Plaintiffs are informed and believe that OCWEN never intended to seek foreclosure upon the loan because it knew that it has refused to honor the October 2013 contractual agreement, and its threats of foreclosure were really intended to surreptitiously obtain Plaintiffs' agreement to pay a higher monthly amount so that OCWEN could cover up its own breach of the October 2013 agreement.

45. By letters dated February 8, 2017, each Plaintiff delivered written dispute letters to all consumer credit reporting agencies (Experian, Equifax, and Trans Union) informing each credit reporting agency of the false and misleading information being reported by OCWEN as described above, explained the history of the issue in order to explain the basis of their disputes, and requested that the agencies contact OCWEN to conduct a re-investigation of the disputed information.

46. Plaintiffs delivered each of their dispute letters via certified U.S. Mail with return receipt requested.

47. Certified mail return receipts have confirmed that each of the dispute letters were properly delivered to each of the consumer credit reporting agencies.

48. Plaintiffs have also received confirmation from each of the credit reporting agencies that each of their dispute letters was received, and that OCWEN has responded

to the agencies' notifications to OCWEN of the disputes.

49. The dispute results provided to Plaintiffs from each credit reporting agency in March 2017 show that OCWEN is maintaining its false claim that Plaintiffs' monthly payments due to OCWEN is the false amount of $964.00, which is false because OCWEN has contracted with Plaintiffs to accept monthly payments in the amount of $310.09.

50. OCWEN has also updated the reporting to claim that the Plaintiffs are now past due in the amount of $42,622.00 and are 180 days or more past due upon the loan, which is misleading because the only reason Plaintiffs are behind in any amount is because OCWEN has refused to accept Plaintiffs' monthly payments as provided in their modification agreement of October 2013.

51. Therefore, Plaintiffs are informed and believe that OCWEN has failed to conduct a reasonable re-investigation of the disputed information, and has failed to updated/modify/delete inaccurate information, because a simple review of OCWEN's own file would confirm that OCWEN contracted with Plaintiffs in October 2013 for OCWEN to accept monthly payments of $310.09 and that Plaintiffs have attempted to honor these monthly payments but OCWEN refused to accept the payments in 2014.

52. Plaintiffs are informed and believe that OCWEN's unlawful conduct in this matter is willful and reckless, because OCWEN knew that it had contracted with Plaintiffs to accept only $310.09 per month, but determined that the agreement was not lucrative for OCWEN so then OCWEN decided to refuse to honor their binding agreement in order to force Plaintiffs into agreeing to a higher monthly amount through improper threats of foreclosure.

53. Plaintiffs have been damaged by way of mental anguish and emotional distress (such as anger, nervousness, embarrassment, loss of sleep, and feelings of distraught and helplessness) over the thought that the company that has the power to remove them from possession of their home and kick them out onto the streets has refused to honor a valid contractual agreement simply because it has decided that is no

longer a lucrative agreement for OCWEN, and because OCWEN has repeatedly uttered false threats of foreclosure simply to attempt to obtain Plaintiffs' agreement to make higher monthly payments as a means of covering up OCWEN's own unlawful conduct.

54. Plaintiffs have also suffered actual damages by way of attorneys' fees paid to their former attorney to attempt to negotiate informally with OCWEN, loss of time and resources over the past several years in attempts to obtain OCWEN's compliance with the October 2013 agreement, loss of creditworthiness and loss of credit opportunity and denial of credit as a result of OCWEN's issuing false and misleading information upon Plaintiffs' consumer credit reports.

**FIRST CAUSE OF ACTION**
**FEDERAL FAIR CREDIT REPORTING ACT**
**15 U.S.C. §§ 1681s-2(b)**

55. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

56. As the furnisher of information to credit reporting agencies, OCWEN is and always was obligated to take mandatory actions upon receiving notice of a dispute by a credit reporting agency by 15 U.S.C. § 1681s-2(b)(1)(A)-(E) of the Federal FCRA, including conducting a reasonable re-investigation that requires OCWEN to do more than just a cursory review, and to then update/modify/delete any inaccurate information and also update the reporting to reflect that the Plaintiffs dispute the account reporting.

57. By letters dated February 8, 2017, each Plaintiff delivered written dispute letters to all consumer credit reporting agencies (Experian, Equifax, and Trans Union) informing each credit reporting agency of the false and misleading information being reported by OCWEN as described above, explained the history of the issue in order to explain the basis of their disputes, and requested that the agencies contact OCWEN to conduct a re-investigation of the disputed information.

58. Plaintiffs delivered each of their dispute letters via certified U.S. Mail with return receipt requested.

59. Certified mail return receipts have confirmed that each of the dispute letters were properly delivered to each of the consumer credit reporting agencies.

60. Plaintiffs have also received confirmation from each of the credit reporting agencies that each of their dispute letters were received, and that OCWEN has responded.

61. The dispute results provided to Plaintiffs from each credit reporting agency in March 2017 show that OCWEN is maintaining its false claim that Plaintiffs' monthly payments due to OCWEN is the false amount of $964.00, which is false because OCWEN has contracted with Plaintiffs to accept monthly payments in the amount of $310.09.

62. OCWEN has also updated the reporting to claim that the Plaintiffs are now past due in the amount of $42,622.00 and are 180 days or more past due upon the loan, which is misleading because the only reason Plaintiffs are behind in any amount is because OCWEN has refused to accept Plaintiffs' monthly payments.

63. Therefore, Plaintiffs are informed and believe that OCWEN has violated 15 U.S.C. §1681s-2(b) by failing to conduct a reasonable re-investigation of the disputed information, and failing to update/modify/delete inaccurate information.

64. A simple review of the account history would confirm that OCWEN contracted with Plaintiffs in October 2013 for OCWEN to accept monthly payments of $310.09 and that Plaintiffs have attempted to honor these monthly payments but OCWEN refused to accept the payments in 2014, and therefore OCWEN failed to conduct a reasonable re-investigation because it either failed to review the October 2013 agreement or did review it and simply ignored it.

65. Plaintiffs are informed and believe that OCWEN's unlawful conduct in this matter is willful and reckless, because OCWEN knew that it had contracted with Plaintiffs to accept only $310.09 per month, but determined that the agreement was not lucrative for OCWEN so then OCWEN decided to refuse to honor the agreement in order to force Plaintiffs into agreeing to a higher monthly amount in order to avoid

1 foreclosure.

2  66. Plaintiffs are also informed and believes that OCWEN's violations were willful by OCWEN disregarding a high degree of risk that their refusal to simply review the account history documents would result in their verifying false and inaccurate information.

 67. As a result of these negligent and willful violations, Plaintiff has suffered actual damages as explained in the statement of facts above.

## SECOND CAUSE OF ACTION
### CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
### Calif. Civ. Code § 1785.25(a)

 68. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs as if fully stated herein.

 69. As the furnisher of information to credit reporting agencies, OCWEN is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known the information was incomplete or inaccurate, as required by Calif. Civ. Code § 1785.25(a) of the California CCRA.

 70. Because OCWEN has reported to the consumer credit reporting agencies every month for the past several years the unequivocally false information that the Plaintiffs owe a monthly payment higher than the contracted-for amount of $310.09 per month, including each month for the past two years prior to the filing of the instant Complaint, OCWEN has thereby violated its obligations under Calif. Civ. Code § 1785.25(a).

 71. OCWEN has also furnished misleading information to the consumer credit reporting agencies each month for the past several years, including each month for the past two years, that Plaintiffs are past due on the account by at least 180 days, which is misleading because the only reason Plaintiffs are behind in this manner is directly caused by OCWEN refusing to accept Plaintiffs' monthly payments upon the October

2013 agreement.

72. Plaintiff is informed and believes that OCWEN's violations as described above were knowing and willful because OCWEN has informed Plaintiffs that it is refusing to honor the October 2013 agreement because it is not a good deal for OCWEN, and therefore OCWEN knows that its reporting is false and misleading.

73. Plaintiffs are informed and believe that OCWEN has continued to provide false and misleading information deliberately in an effort to force Plaintiffs into agreeing to pay a higher monthly amount.

74. Plaintiffs have suffered actual damages as described in the factual allegations above.

### THIRD CAUSE OF ACTION
### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### Calif. Civ. Code §§1788, *et seq.*

75. Plaintiffs repeat, re-allege, and incorporate by reference all other paragraphs, as if fully set forth herein.

76. At all times during the aforementioned actions, there was in full force and effect the following obligation for a debt collector in connection with the collection of any debt, pertaining to pursuant to California Civil Code § 1788.17 of the Rosenthal Act, requiring all debt collectors to be responsible for and liable for all requirements contained with the Federal FDCPA, exceptions of which are not applicable:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

77. By delivering letters to Plaintiffs each month that claim Plaintiffs owe a monthly amount higher than the agreed-upon amount of $310.09, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692e, 1692e(10), and 1692e(2)(A) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17, by uttering false and misleading statements, and falsely claiming that the Plaintiffs owe an amount that they do not owe, in an attempt to collect such unlawful monies from Plaintiffs.

78. By furnishing false and misleading information each month since November 2013 to the consumer credit reporting agencies, and doing so in an attempt to force the Plaintiffs into agreeing to pay a higher amount than what they are obligated to pay, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692e, 1692e(10), and 1692e(8) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17.

79. By delivering multiple letters to Plaintiffs that claim OCWEN intends to seek foreclosure upon the loan and take possession of Plaintiffs' home, and claiming to Plaintiffs that they could avoid foreclosure by making higher monthly payments or seeking a loan modification for higher monthly payments, and OCWEN never actually intended to seek such foreclosure because it knows that it is actually the one in breach of the October 2013 agreement, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692e, 1692e(5), 1692e(10), and 1692e(2)(A) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17.

80. By delivering letters to Plaintiffs each month that claim Plaintiffs owe a monthly amount higher than the agreed-upon amount of $310.09, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692f and 1692f(1) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17, by uttering false and misleading statements, and falsely claiming that the Plaintiffs owe an amount that they do not owe, in an attempt to collect such unlawful

monies from Plaintiffs, which is unfair and unconscionable means to attempt to collect the debt.

81. By furnishing false and misleading information each month since November 2013 to the consumer credit reporting agencies, and doing so in an attempt to force the Plaintiffs into agreeing to pay a higher amount than what they are obligated to pay, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692f and 1692f(1) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17, which is unfair and unconscionable means to attempt to collect the debt.

82. By delivering multiple letters to Plaintiffs that claim OCWEN intends to seek foreclosure upon the loan and take possession of Plaintiffs' home, and claiming to Plaintiffs that they could avoid foreclosure by making higher monthly payments or seeking a loan modification for higher monthly payments, and OCWEN never actually intended to seek such foreclosure because it knows that it is actually the one in breach of the October 2013 agreement, OCWEN has engaged in multiple on-going violations of 15 U.S.C. §§1692f, 1692f(1), and 1692f(6) of the Federal FDCPA, which are necessarily violations of the California Rosenthal Act via Calif. Civ. Code 1788.17.

83. Defendant's violations have caused Plaintiff significant emotional distress damages, as explained above, and also entitles Plaintiff to statutory damages in addition to actual damages.

## FOURTH CAUSE OF ACTION
## PROMISE WITHOUT INTENT TO PERFORM

84. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs as if fully stated herein.

85. In October 2013, OCWEN promised to Plaintiffs that they could lower their monthly payments to $310.09 per month on specific terms.

86. However, OCWEN never intended to honor this promise.

87. Plaintiffs relied on this promise by fully complying with all terms specified

by OCWEN in order for Plaintiffs to obtain this lower monthly payment amount.

88. As a result, Plaintiffs have been damaged because OCWEN has refused to honor the October 2013 agreement simply because OCWEN claims it is not a good deal for it.

89. Plaintiffs have been damaged as specified in the factual allegations above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages as follows:

1. Actual damages in the amount of $150,000.00 to each Plaintiff individually, or as the jury may allow;

2. Plus punitive damages of $100.00-$5,000.00 for each Plaintiff individually for each willful violation of Calif. Civ. Code § 1785.25(a) by Defendant, pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);

3. Injunctive relief to order Defendant to remove the false and misleading reporting from Plaintiffs' consumer credit reports, pursuant to Calif. Civ. Code § 1785.31(b);

4. Plus statutory damages in the amount of $1,000.00 for each Plaintiff individually per willful violation pursuant to 15 U.S.C. §1681n(a)(1)(A) of the Federal FCRA;

5. Plus punitive damages in any such amount that the Court and jury may allow for willful violations pursuant to 15 U.S.C. §1681n(a)(2) of the Federal FCRA;

6. Plus statutory damages of $1,000.00 for each Plaintiff individually pursuant to Calif. Civ. Code §1788.30(b);

7. Punitive damages in any amount that the Court and jury may allow for the sake of example and punishing Defendants, pursuant to Calif. Civ. Code § 3294;

8. Any reasonable attorney's fees and costs to maintain the instant action.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of

**Complaint for Damages and Injunctive Relief**

1 | America, Plaintiff is entitled to, and demands, a trial by jury.

2 |                                           SEMNAR & HARTMAN, LLP

3 | DATED: 04/05/2017              /s/ *Jared M. Hartman*
4 |                                       JARED M. HARTMAN, ESQ.
5 |                                       Attorneys for Plaintiff

**Complaint for Damages and Injunctive Relief**