# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATLEY HENRY; LAURA HENRY,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC.;<br>IMPAC MORTGAGE CORP.,<br><br>Defendants. | CASE NO. 17cv0688 JM(NLS)<br><br>ORDER DENYING MOTION TO STRIKE |

Pursuant to Fed.R.Civ.P. 12(f), Plaintiffs Atley and Laura Henry move to strike the affirmative defenses alleged by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank National Trust Company ("Deutsche Bank"), erroneously sued as Impac Mortgage Corp. ("Impac"), as Trustee Under the Pooling and Servicing Agreement Relating to Impac Secured Assets Corp., in response to Plaintiff' First Amended Complaint ("FAC"). Defendants oppose the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court denies the motion to strike.

## BACKGROUND

On June 27, 2017, Plaintiffs filed the FAC, alleging four causes of action for: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681s-2(b); (2) violation of the California Consumer Credit Reporting Agencies Act ("CCCRA"), Cal.

1  Div. Code §1785.25(a); (3) violation of the Rosenthal Fair Debt Collection Practices
2  Act ("RFDCPA"); and (4) breach of contract. Plaintiffs' causes of action arise from
3  the following generally described allegations.

4  In 2009, Plaintiffs allegedly obtained a "home mortgage loan" from Impac, who
5  had retained Ocwen to act as the loan servicer. (FAC ¶¶17, 18). "At some point in
6  2012 or 2013, Plaintiffs began suffering financial difficulties in making their full
7  monthly payments upon the loan." (FAC ¶23). In July 2013, Plaintiffs allegedly
8  received a document from Impac entitled "Loan Modification Agreement," indicating
9  that the monthly payments were being reduced to $310.09. (FAC ¶25). By letter dated
10 October 16, 2013, Ocwen informed Plaintiffs that their loan modification had been
11 approved, subject to submitting a notarized signed loan modification by October 26,
12 2013. (FAC ¶28). Plaintiffs complied with this requirement.

13 In December 2013, Plaintiffs began making the monthly $310.09 payment.
14 However, Ocwen would not accept the payments, placed some of the payments in an
15 escrow account, and rejected others. (FAC ¶¶ 32-36). Plaintiffs contacted Impac and
16 were informed that the loan had, in fact, been modified. Impac also represented that
17 Ocwen "was really bad about paperwork, and instructed Plaintiffs to continue to make
18 their monthly payments." "At some point in 2014," Plaintiffs again contacted Ocwen
19 to inquire as to why their payments were not being accepted and were allegedly
20 informed that they were investigating the issue. (FAC ¶40).

21 Plaintiffs retained counsel in December 2014. Ocwen then allegedly represented
22 that it would not honor "the October 2013 modification agreement because it was not
23 a lucrative deal for Ocwen." (FAC ¶45). The parties attempted to resolve their dispute.
24 The parties' informal settlement discussions continued until January 2017. At that
25 time, Plaintiffs discovered that Ocwen had been furnishing new information each
26 month to the credit reporting agencies indicating that Plaintiffs' account was over 180
27 days past due and the monthly shortfall in payments was $964. As of November 30,
28 2016, the account was allegedly past due by more than $40,663. Had Defendants

honored the loan modification, allegedly, the account would be current.

In February 2017, Plaintiffs provided written dispute letters to all consumer credit reporting agencies (Experian, Equifax, and Trans Union) informing them about the allegedly false and misleading information being reported by Ocwen. (FAC ¶58). The credit reporting agencies contacted Ocwen about Plaintiffs' dispute letters. Ocwen responded to the inquiry and represented that the reported past due amounts were correct.

Plaintiffs allege that Ocwen failed "to conduct a reasonable re-investigation of the disputed information, and failed to update/modify/delete inaccurate information." (FAC ¶64). Since April 5, 2016, Plaintiffs allege that they have received multiple letters from Ocwen threatening to seek foreclosure upon the loan and take possession of the property. Ocwen has never initiated foreclosure proceedings.

On August 23, 2017, the court denied Defendants' motion to dismiss. Defendants answered on September 6, 2017, and Plaintiffs move to dismiss the affirmative defenses identified in the FAC.

## DISCUSSION

**Legal Standard**

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F2d. 1524, 1527 (9th Cir. 1993, rev'd on other grounds 510 U.S. 517 (1994)). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Wyshak v. City Nat'l Bank, 607 F.2d 924, 827 (9th Cir. 1979).

Plaintiff contends that the heightened pleading standards enunciated in Bell Atl.

1   Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 566 U.S. 662
2   (2009) apply equally to pleading affirmative defenses. In these authorities, the
3   Supreme Court held that a claim may not contain wholly conclusory allegations but
4   must allege "sufficient factual material to state a claim which is plausible on its face."
5   Iqbal, 566 U.S. at 665.

6   The parties agree that no circuit court has addressed whether a heightened
7   pleading standard applies to affirmative defenses, and that district courts are split on
8   the issue. In support of application of the heightened pleading standard to affirmative
9   defenses, courts have reasoned that the "same logic holds true for pleading affirmative
10  defenses [as for pleading a complaint] - without alleging facts as part of the affirmative
11  defenses, [a] [p]laintiff cannot prepare adequately to respond to those defenses."
12  Francisco v. Verizon South, Inc., 2010 WL 2990159 (E.D. VA July 29, 2010) (quoting
13  Holtzman v. B/E Aerospace, Inc., 2008 WL 2225668 (S.D. Fla. 2008)) (noting that the
14  majority of district courts to have reached this issue have held that Twombly applies
15  to affirmative defenses); Anticancer Inc. v. Xenogen Corp., 248 F.R.D. 278, 282 (S.D.
16  Cal. 2007) (Judge Rudi Brewster holding that Twombly applies to affirmative defenses
17  because "like claims, counterclaims, and cross-claims, affirmative defenses also make
18  claims to relief").

19  On the other hand, courts have held that heightened pleading is not required
20  under Rule 8(c).

> [While plaintiff contends that the pleading standard of Twombly]should also apply to affirmative defenses, he acknowledges that the Supreme Court has never so held. ( See Reply at 6–7.) To be sure, there is some lower court authority holding that Twombly does apply to affirmative defenses. However, the Ninth Circuit has yet to so hold, and this Court is not convinced that Twombly should also apply to affirmative defenses. Twombly addressed only Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." In Ashcroft v. Iqbal, –– U.S. ––, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009), the Supreme Court reasoned that "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'shown' - that the pleader is entitled to relief." In contrast to the language of Rule 8(a) governing claims, the pertinent language of Rule 8(b) governing defenses generally provides that "in responding to a pleading, a party must ... state in short and plain

terms its defenses to each claim asserted against it." See Fed.R.Civ.P. 8(b)(1)(A). Further, Fed.R.Civ.P. 8(c)(1) governing affirmative defenses in particular provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense," including the various listed defenses. Neither Rule 8(b) nor Rule 8(c) contains language that precisely corresponds to Rule 8(a)'s language requiring that the pleader "show" that he is entitled to relief. Whether any of defendants' affirmative defenses have been asserted in violation of Fed.R.Civ.P. 11(b)(4) is an issue that simply is not appropriate for adjudication at this early stage of the proceedings, prior to plaintiff's propounding of discovery directed to those affirmative defenses.

Garber v. Mohammadi, 2011 WL 2076341 (C.D. Cal. Jan. 19, 2011).

Although a close issue, the court concludes that affirmative defenses are not subject to a heightened pleading standard. In addition to the technical Rule 8 argument addressed in Garber, practical and judicial economy considerations further support application of the traditional pleading standard for affirmative defenses. From a practical point of view, a plaintiff may investigate a potential claim for weeks, months, or even years before filing a complaint. To expect a defendant to retain counsel, investigate claims, adequately prepare an answer, and to plead affirmative defenses with particularity within 21 days of service of the complaint, Fed.R.Civ.P. 12(a)(1), would seem to be unrealistic in most cases, subject to the nature and complexities of each case. See Falley v. Friends Univ., 2011 U.S. Dist. LEXIS 40921 at *9 (D.Kan April 14, 2011). Further, a heightened pleading standard may require the court to address multiple motions to amend the answer as discovery reveals additional defenses. See Ameristar Fence Prod., Inc v. Phx. Fence Co., 2010 U.S. Dist. LEXIS 81468 at *1 (D. Ariz. July 15, 2010). These considerations, in conjunction with the disfavored nature of Rule 12(f) motions, and the limited role of pleadings in federal court, see Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (9th Cir. 2000), caution against the application of the heightened pleading standard to affirmative defenses.[1]

**The Motion**

In large part, Plaintiffs accurately represent that the affirmative defenses asserted

---

[1] Consistent with Fed.R.Civ.P. 1, the court notes that there may be unique circumstances where a heightened pleading standard is appropriate. However, this is not one of those cases.

by Defendants are, in essence, boilerplate in nature and not necessarily applicable under the particular circumstances of the case. At this early stage, nothing more is required. The affirmative defenses are plainly stated. As the case commences discovery, the court anticipates the parties will discover the contours of Plaintiffs' claims and Defendants' defenses, and bring timely and appropriate motions.

Finally, the court rejects Plaintiffs' argument that enumerated Rule 12(b) motions are not appropriately set forth as defenses in the answer. Rule 12(b) specifically provides that defenses "may" be set forth in the answer or, alternatively, be brought by separate motion. Fed.R.Civ.P. 12(b). Similarly, Rule 8(c) requires an answer to "state any avoidance or affirmative defense." By any measure, enumerated Rule 12(b) motions may be brought separately or, alternatively, included as an affirmative defense.

In sum, the motion to strike is denied.

**IT IS SO ORDERED.**

DATED: February 26, 2018

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties